UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MID AMERICA SOLUTIONS LLC,     Case No. 1:16-mc-2
    Plaintiff,     Beckwith, J.
        Litkovitz, M.J.
vs.

VANTIV, INC., et al.,     **ORDER**
    Defendants.

This matter is before the Court on plaintiff Mid America Solutions LLC's ("MAS") motion to compel discovery from third-party defendant Vantiv, Inc. ("Vantiv") related to MAS's pending breach of contract action in the United States District Court for the Western District of Michigan against defendant Merchant Solutions International, Inc. ("MSII"). (Doc. 3). The Court has considered plaintiff's supplement to its motion (Doc. 7), MSII's response in opposition (Doc. 8), Vantiv's response in opposition (Doc. 11), and plaintiff's combined reply memorandum (Doc. 13). This matter is also before the Court on Vantiv's motion to quash subpoenas and motion for sanctions (Doc. 12) and plaintiff's response in opposition (Doc. 13). The Court heard oral argument from the parties on these motions on March 17, 2016. At the conclusion of oral argument, the Court directed the parties to supplement the record on various matters. The supplemental memoranda of plaintiff (Docs. 19, 20), MSII (Doc. 21), and Vantiv (Doc. 22) are also before the Court.

**I. Background**

On June 2, 2015, plaintiff filed a complaint against MSII and individual defendants Peter J. Concannon and John T. Leodler in the Western District of Michigan. (*See* W.D. Mich. Case No. 1:15-cv-563, Doc. 1). In an amended complaint filed August 3, 2015, plaintiff alleged the following causes of action: (1) breach of contract against MSII; (2) actionable fraud against Concannon and Leodler; (3) silent fraud against Concannon and Leodler; and (4) concert of

action against Concannon and Leodler. (*See* First Amended Complaint with Jury Demand, Doc. 3-1, Exh. A). On January 8, 2016, the Michigan court granted defendants' motion for partial summary judgment, finding that the claims of actionable fraud, silent fraud, and concert of action against Concannon and Leodler were barred by Michigan's economic loss rule. (*See generally* W.D. Mich. Case No. 1:15-cv-563, Doc. 29). Thus, only plaintiff's breach of contract claim against MSII is still at issue in the Michigan case.

Plaintiff's breach of contract claim involves a contract between plaintiff and MSII "relating to credit card and other transaction processing services." (Doc. 3-1, Exh. A at ¶ 6). Plaintiff alleges that MSII "has breached and continues to breach its contractual obligations to Plaintiff by falsely reporting merchant volumes, net profits, monthly residual reports." (*Id.* at ¶ 7). Further, plaintiff alleges that MSII "falsifies merchant statements that report volume, transactions, returns, chargebacks and calculation of merchant expenses." (*Id.*). Plaintiff alleges that after "discovering irregularities" it requested of MSII "both explanation and documentation from the processor [Vantiv] . . . so as to account for and cross check the reported numbers that [MSII] has and is furnishing to Plaintiff." (*Id.* at ¶ 9). Plaintiff alleges that it sought "original source documents" from Vantiv, but that MSII withheld permission for Vantiv to give those documents to plaintiff. (*See id.* at ¶¶ 9-10).

Plaintiff served Vantiv with a subpoena dated October 14, 2015. (*See* Subpoena to Produce Documents dated Oct. 14, 2015, Doc. 11-1, Exh. V-1). The subpoena commanded production of the following documents:

(1) read-only access to the NPCrm web reporting portal to include reporting related to "residuals"[1] for plaintiff as MSII's sub-agent from March 2007 and continuing to July 2016

---

[1] Because this concept of "residuals" is so important to this dispute, the following explanation is instructive:

In 2000, [the parties] entered into a Marketing Agreement whereby [plaintiff] agreed to serve as an independent sales organizer/member service provider ("ISO/MSP") exclusively responsible for

2

(2) original, secure, unaltered system-generated documents for reporting of residuals for plaintiff, including merchant identification numbers, monthly reported number of transactions, total dollar volume of transactions, all calculated revenues and expenses, and reported net profits from March 2007 to the present

(3) original, secure, unaltered system-generated documents for reporting of residuals for plaintiff that were reported by Vantiv to MSII from March 2007 to the present

(4) documentation related to Vantiv's decision to no longer process transactions for collection agencies

(5) original, secure, unaltered system-generated documents relating to monthly chargebacks[2] for plaintiff's merchant accounts from March 2007 to the present

(6) original, unaltered chargeback notifications received from issuing banks and processed by Vantiv for plaintiff's merchants from November 1, 2014 to the present

(7) complete original list of all processing networks used by Vantiv for chargebacks, transactions, returns, retrievals, batches, and deposits from March 2007 to the present, including documentation regarding the CBRET Network as reported on the mynpcdata.net web reporting portal

(8) the glossary of terms utilized for the "special coding" that appears on the mynpcdata.net web reporting portal beginning October 1, 2013

(9) original, secure, unaltered system-generated documentation of the special coding utilized for the merchant Credit Collection Services from March 2007 to the present

(10) original, secure, unaltered system-generated documents listing all plaintiff's merchants from March 2007 to the present

(11) copies of MSII's agent agreements with Vantiv from March 2007 to the present

(12) the complete listing of every user who has had editorial access to the mynpcdata.net reporting portal for plaintiff's merchants, including documentation of any editorial authority given to or exercised by MSII

(13) the author, source, and documentation related to the 11,030 transactions listed as "Pended for Fraud/Risk Review" on Credit Control Services, Inc.'s November 2014 statement

---

soliciting customers for [defendant's] credit and debit card transaction processing business. In the card transaction business, processors such as [defendant] receive compensation from individual merchants in an amount based on a percentage of all sales processed for each merchant. The percentage rate paid by a merchant—designated the "merchant rate"—is independently negotiated and thus varies as to each individual merchant. Under the Marketing Agreement, [plaintiff] was entitled to receive compensation in the form of "residuals" representing the difference between the merchant rate and the percentage rate charged per transaction to [plaintiff]. Thus, if the merchant rate charged to a particular merchant was 7 cents per dollar and the rate charged [plaintiff] was four cents per dollar, [plaintiff] would be entitled to 3 cents per dollar of all transactions processed for that merchant.

*Bus. Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10-cv-669, 2014 WL 4215590 at *1 (W.D. Ky. Aug. 25, 2014). In the instant case, Vantiv is the processor, MSII is the ISO, and plaintiff is MSII's sub-agent that solicited customers on MSII's behalf for a percentage of the residuals that Vantiv paid to MSII.

[2] "A chargeback occurs when a customer calls the credit card company directly and contests or disputes a charge. Merchant banks—and credit-card processors—will generally not do business with merchants that experience high volumes of chargebacks, as those merchants present a greater financial risk." *United States v. Warshak*, 631 F.3d 266, 279 (6th Cir. 2010).

  (14) the author, source, and documentation related to the 40,000 transactions listed as "Pended for Fraud/Risk Review" on Credit Control Services, Inc.'s February 2015 statement

  (15) the author, source, and documentation related to the 42,669 transactions listed as "Pended for Fraud/Risk Review" on Credit Control Services, Inc.'s April 2015 statement

  (16) a listing of all the "Pended for Fraud/Risk Review" transactions for plaintiff's merchants and the results of the review findings from March 2007 to the present

  (17) information related to account adjustments for merchant accounts that were reported as terminated and unpaid in June 2014

  (18) information concerning the author of the July 2015 monthly batch summary for plaintiff's merchants and the documented basis for failing to include the $269,948.59 reported volume for July 25, 2015 in the final reported monthly actual volume

  (19) the settlement files provided to Vantiv from TSYS[3] for Credit Control Services, Inc.'s transactions in February 2015

(*See id.*). The subpoena listed a date of compliance of November 13, 2015, but plaintiff agreed to provide Vantiv an extension of time to comply until December 2, 2015. (*See id.*; email from plaintiff's counsel to Vantiv's counsel dated Nov. 18, 2015, Doc. 11-3, Exh. V-3).

On December 2, 2015, Vantiv provided written responses and objections to the subpoena, but did not produce any documents because a protective order had not yet been entered. (*See* Vantiv's responses and objections to the Oct. 14, 2015 subpoena, Doc. 3-3, Exh. C). Vantiv indicated that it did not maintain separate residual reports for plaintiff as MSII's sub-agent, but Vantiv intended to produce the residual reports maintained for MSII once a protective order was entered. (*See id.* at 5-7).[4]

On December 8, 2015, MSII filed a motion for protective order and/or to quash the subpoena issued to Vantiv in the Michigan court. (*See* MSII's motion for protective order and/or to quash, Doc. 11-4, Exh. V-4). MSII argued that the subpoena should be quashed because it

---

[3] The parties indicated at oral argument that TSYS was the front-end processor for plaintiff's merchants and Vantiv was the back-end processor until Vantiv took over the front-end processing duties as well. Payment processors "are responsible for transaction authorization." Kelly K. Yang, *Paying for Infringement: Implicating Credit Card Networks in Secondary Trademark Liability*, 26 BERKELEY TECH. L.J. 687, 697 (2011). Front-end processors "electronically route a transaction from the point of sale to the [credit card] network." *Id.* at 697 & n. 73. Back-end processors "use this point of sale electronic information to deposit funds in the merchant's account." *Id.* at 697 & n.74.

[4] Page citations for this document refer to the page numbers provided by CM/ECF.

4

sought confidential information related to MSII's other sub-agents, independent contractors, and merchants. (*See id.* at 9-11).[5]

On January 20, 2016, plaintiff and MSII entered a joint notice in the Michigan court that the parties had resolved the issues surrounding MSII's motion to quash. (*See* Joint Notice Informing Court of the Status of Defendants' Motion for Protective Order or to Quash Third-Party Subpoena, Doc. 11-6, Exh. V-6). Specifically, the parties agreed "that Vantiv will sort the residual reports at issue . . . and produce only data concerning Plaintiff's merchants. Vantiv will simultaneously provide an affidavit verifying the process it went through to produce data relating to Plaintiff's merchants only and such other information as agreed between counsel for Vantiv and counsel for Plaintiff." (*Id.*).

After Vantiv produced documents in response to the subpoena, plaintiff served its first supplemental subpoena on Vantiv. Specifically, the subpoena directed Vantiv to produce the information requested in production request numbers 2 and 3 from the original subpoena in a "condensed" form. (*See* Supplemental Attachment to Subpoena to Produce Documents and Permit Inspection of Premises dated February 9, 2016, Doc. 3-4, Exh. D at PAGEID# 127-28). Plaintiff provided an excerpt from a document produced by Vantiv, i.e., "Confidential batch summary and settlement data for July 2015," as an example of the information plaintiff was seeking. (*See id.* at PAGEID# 129). Plaintiff indicated that like this document, the production it sought in the first supplemental subpoena should include "the Activity Period, Merchant MID#, Merchant Name, Total Sales Volume, Total Sales Transactions, Total Returns Volume, Total Returns Transactions, Total Net Sales Volume, Total Merchant Revenue, Total Group Costs, Total Adjusted Residual, and Total Residual BPS." (*Id.* at PAGEID# 127-29). The first supplemental subpoena also commanded Vantiv to permit entry to its premises for inspection.

---

[5] Page citations for this document refer to the page numbers provided by CM/ECF.

(*See id.* at PAGEID# 124). Vantiv objected to producing the additional document requests because the residual reports already produced in response to the original subpoena contained all the information requested in the first supplemental subpoena and those reports were the form in which the requested information was ordinarily maintained. (*See* email from Vantiv's counsel to plaintiff's counsel dated Feb. 10, 2016, Doc. 3-5, Exh. E at PAGEID# 138).

In a third subpoena ("second supplemental subpoena"), plaintiff directed Vantiv to produce the following:

(1) monthly reports for October 2013 to the present for 42 specific merchants, "as normally reported from the Vantiv Back End processing platform in electronic format"
(2) the monthly chain and association numbers for each of the 42 merchants for October 2013 to the present
(3) if any of the 42 merchants has more than one association or chain number, the identity of the person or entity listed with each number

(*See* Attachment to Subpoena to Produce Documents and Permit Inspection of Premises dated Feb. 18, 2016, Doc. 7-4, Exh. 4 at PAGEID# 194-95). Plaintiff indicated that the requested monthly reports should be "organized and labeled according to the TSYS monthly merchant Back End Statement sample included herewith; or, in a reasonably usable form" that includes information concerning daily deposits and adjustments, settlement charges, authorization charges, and all adjustments/chargeback detail. (*Id.* at PAGEID# 194). Vantiv objected that the information requested was not relevant to the litigation between plaintiff and MSII. (*See* email from Vantiv's counsel to plaintiff's counsel dated March 2, 2016, Doc. 7-3, Exh. 3 at PAGEID# 189). Vantiv stated that it "already produced documentation of the residuals paid to MSII which is what [plaintiff] needs to determine if it received what it should have pursuant to its contract with MSII." (*Id.*). Vantiv asserted that plaintiff's additional production requests were "unnecessary and harassing." (*Id.*). Vantiv objected that it had "no obligation to create

6

documents . . . that are not maintained in the normal course of its business" to look like the format of TSYS documents. (*Id.*).

## II. Standard of Review

Federal Rule of Civil Procedure 26 permits parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Demonstrating relevance is the burden of the party seeking discovery." *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citations omitted). Where a party has propounded discovery but has not received adequate responses, that party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2).

"A subpoena to a third party under [Federal Rule of Civil Procedure] 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *3 (E.D. Mich. Nov. 26, 2013) (citing *Martin v. Oakland Cty.*, No. 2:06-cv-12602, 2008 WL 4647863, at *1 (E.D. Mich. Oct. 21, 2008)). A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). To determine whether a subpoena imposes an "undue burden," the Court considers "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136 (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996)). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Id.* (citations omitted).

7

When evaluating a motion to quash a subpoena under Rule 45(d)(3), the Court may consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Baumgardner v. La. Binding Serv., Inc.*, No. 1:11-cv-794, 2013 WL 765574, at *1 (S.D. Ohio Feb. 28, 2013) (quoting *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003)). "If the documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Id.* (quoting *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-mc-13, 2008 WL 440458, at *3 (N.D. Ohio Feb. 13, 2008)).

"Tying together all of these rules is the overarching principle that a court has broad discretion in fashioning and limiting discovery." *State Farm Mut. Auto. Ins. Co.*, 2013 WL 10936871, at *4 (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) ("The scope of discovery is, of course, within the broad discretion of the trial court."); *Multimatic Inc. v. Faurecia Interior Sys. USA*, 358 F. App'x 643, 652 (6th Cir. 2009) ("A district court has broad discretion to deny unduly broad discovery requests.")).

### III. Analysis

Plaintiff argues that Vantiv's response to its subpoenas "was limited, largely unusable and . . . non-responsive to the requirements of the subpoena." (Doc. 3 at 13). Plaintiff contends that Vantiv's response was "essentially an unusable raw data dump" that "was not in workable form such as is provided in Vantiv/NPC's web reporting portal 'NPCrm.'" (*Id.*). Plaintiff seeks access to the NPCrm portal "to view the residuals paid to Defendant MSII." (*Id.* at 14-15). Plaintiff contends that Vantiv has failed to meet its obligation under Rule 45(a)(1)(D) "to permit inspection, copying, testing, or sampling of the materials" provided in response to the subpoenas.

8

(*Id.* at 15). Plaintiff asserts that providing it access to the NPCrm portal would be the "most practical and efficient method for inspecting, copying, testing, or sampling of the net profits – 'residuals' paid by Vantiv/NPC to Defendant MSII for the processing of Plaintiff's merchants." (*Id.*). Plaintiff contends the "raw data dump" that Vantiv produced "conceals rather than discloses the relevant records or makes it unduly difficult to identify or locate them." (*Id.* at 17). Plaintiff asserts that the "raw data dump" does not include total net sales volume or total residual BPS. (*Id.* at 18). Plaintiff indicates that although it requested data from March 2007 to the present, the "raw data dump" included data only from September 2011 through December 2015. (*Id.*). Plaintiff contends that Vantiv has failed to comply with production request numbers 4, 6, 7, 8, 9, 12, 13, 14, 15, 16, and 17. (*See id.* at 19-21; Oct. 1, 2015 records subpoena with plaintiff's comments, Doc. 20-6, Exh. M at PAGEID #767-773).

Vantiv responds that it has produced the amount of residuals it paid to MSII in a reporting form it regularly maintains, which was the form of production to which the parties agreed in the Michigan court. (Doc. 11 at 10). Vantiv argues that plaintiff's "unsupported and false accusations [against Vantiv] further reveal [plaintiff's] motive to harass Vantiv and engage in fishing expedition discovery practice." (*Id.* at 11). Vantiv contends that the residual reports it has produced to plaintiff contain the same information that goes into the NPCrm database and that "[t]here is simply no justification for the production of the residual reports in any other form beyond the way in which they are usually maintained nor for [plaintiff] to enter Vantiv's premises to review the very same information on the portal." (*Id.* at 12). Vantiv argues that there is no authority to support "the use of a document subpoena to obtain log-in credentials to a database containing confidential and proprietary information maintained by a non-party." (*Id.* at 12-13). Vantiv asserts that it does not consistently maintain reports of residuals for MSII prior to September 2011. (*Id.* at 13 n.11; Declaration of Kevin Frantz, Doc. 11-10, Exh. V-10 at ¶ 6).

9

Vantiv contends plaintiff has not provided any justification for the requested inspection of Vantiv's electronic systems. (Doc. 11 at 14). Vantiv argues that plaintiff's argument that it needs to inspect Vantiv's electronic systems is disingenuous when Vantiv had agreed to draft an affidavit regarding the sorting process and production of the residual reports, but plaintiff changed its initial request and said an affidavit would not be necessary. (*Id.* at 15). Vantiv contends that all other production requests are irrelevant, were issued primarily to harass, and should be quashed. (*Id.* at 15-18). Specifically, Vantiv argues that plaintiff's other production requests are designed to allow it "to re-calculate the amount of residuals it believes Vantiv *should* have paid to MSII." (*Id.* at 16). However, Vantiv contends that the only information relevant to plaintiff's breach of contract claim with MSII is the amount of residuals that Vantiv actually paid to MSII. (*Id.*). Vantiv argues that the Court should grant sanctions against plaintiff "for its harassing discovery tactics and award Vantiv appropriate costs and fees pursuant to Rule 45(d)(1)." (*Id.* at 19).

MSII responds that if the Court requires Vantiv to produce any additional information, such production should be narrowly tailored to prevent the disclosure of trade secret or other confidential information regarding MSII and its agents, independent contractors, and merchants. (Doc. 8 at 8). Specifically, MSII argues that plaintiff's requests for "unaltered" system information would encompass confidential and proprietary information concerning MSII's relationships with other independent contractors and merchants. (*Id.* at 8-9). MSII contends that information concerning the identities of MSII's other agents, independent contractors, and merchants has "absolutely nothing to do with Plaintiff's" breach of contract claim, which "rests solely on Plaintiff's contractual relationship with MSII and the processing volume of Plaintiff's merchants." (*Id.* at 9). MSII argues that plaintiff's requests for information dating back to March 2007 are overly broad because the statute of limitations in Michigan for a breach of

10

contract case is six years. (*Id.* at 11). MSII contends that documents from July 2015 to the present are "totally irrelevant" because the contract between MSII and plaintiff "was terminated in June 2015, after which Plaintiff was entitled to no further residual payments." (*Id.*).

In reply, plaintiff argues that it "has always sought and subpoenaed only the records concerning its merchants." (Doc. 13 at 5). Plaintiff contends that while the Michigan court dismissed fraud counts against individual defendants, "[f]raud is still at issue with the corporate defendant," and "under Michigan law active concealed fraud tolls the six year statute of limitations for contracts until the fraud is discovered." (*Id.* at 6). Plaintiff argues that back-end processing records from October 2013 to the present, i.e., after Vantiv took over the back-end processing for MSII's merchants, are "relevant and necessary" given MSII's diversion of the accounting of back-end records related to association and chain codes. (*See id.* at 7-8).

A. Residual Reports (Document Request Nos. 1, 2, and 3; First Supplemental Subpoena)

Plaintiff concedes that the essential issue in the Michigan case is the amount of residuals for plaintiff's merchants that Vantiv paid to MSII. (*See* Doc. 3 at 12). To obtain this information, plaintiff issued the October 14, 2015 subpoena upon Vantiv. Vantiv refused to provide any responsive documents until a protective order was entered. (*See* Vantiv's responses and objections to the Oct. 14, 2015 subpoena, Doc. 3-3, Exh. C). MSII filed a motion for a protective order and to quash the subpoena in the Michigan court. Eventually, plaintiff and MSII reached the following agreement concerning MSII's motion: "Vantiv will sort the residual reports at issue . . . and produce only data concerning Plaintiff's merchants." (*See* Joint Notice Informing Court of the Status of Defendants' Motion for Protective Order or to Quash Third-Party Subpoena, Doc. 11-6, Exh. V-6). Subsequently, Vantiv produced information concerning residuals that was responsive to document request numbers 2 and 3 in the subpoena. This

11

information was sorted pursuant to the parties' agreement in the Michigan court to include only information pertaining to plaintiff's merchants.

The Court has examined a sample of this information that was presented to it at oral argument. This information was presented in the form of an Excel spreadsheet, and contained a column for "adjusted residuals." Based on the March 17, 2016 oral argument and the parties' filings, the Court finds that this column of information contains the data concerning the amount of residuals paid by Vantiv to MSII for plaintiff's merchants that is relevant to plaintiff's breach of contract claim against MSII. Plaintiff's argument that the information contained in this column is "limited, largely unusable and . . . non-responsive" is not well-taken. To use this data in advancing its breach of contract claim against MSII, all plaintiff must do is use the sum function in excel to calculate the total amount of adjusted residuals that Vantiv paid to MSII for plaintiff's merchants. In his deposition, Ronald Smith, the owner of plaintiff, testified that he was able to use the sum function in Excel to total information provided by Vantiv related to transaction volume, but he "just didn't" total the amounts in the adjusted residual column. (*See* Deposition of Ronald Smith dated March 22, 2016, Doc. 21-4, Exh. 3 at 61-63).[6] Further, while the residual reports provided by Vantiv do not include columns of data for total net sales volume and total residual BPS, Vantiv explained to the Court's satisfaction at oral argument how plaintiff can calculate these items within the Excel spreadsheet using the data that is included in the reports. Thus, the Court finds that plaintiff has failed to demonstrate that the information Vantiv has provided is non-responsive or unusable.

Instead, plaintiff argues that it is entitled to receive this same information in a condensed reporting format in a form such as that received from TSYS, plaintiff's former front-end processor. However, plaintiff's original subpoena requested the relevant residual data in its

---

[6] Page citations for this document refer to the internal page numbers of the deposition.

original, unaltered form. (*See* Subpoena to Produce Documents dated Oct. 14, 2015, Doc. 11-1, Exh. V-1 at Document Request Nos. 2 and 3). A Vantiv representative attested that the residual information provided to plaintiff was the original, unaltered system-generated information as kept in the ordinary course of business. (*See* Declaration of Kevin Frantz dated March 4, 2016, Doc. 11-10, Exh. V-10). Thus, plaintiff's request that Vantiv now alter the format of its reporting to match the TSYS format is contrary to plaintiff's original requests. Further, such a request is not "proportional to the needs of the case," as Vantiv has already provided the relevant residual information, but plaintiff has not taken the simple step of using the sum function in Excel to analyze it. *See* Fed. R. Civ. P. 26(b)(1). Additionally, the Court finds that compliance with plaintiff's additional requests for the same data in a condensed format would impose an undue burden, especially given that Vantiv already provided the data in the format plaintiff originally requested and Vantiv is a non-party to this action. *See Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136. Thus, plaintiff's motion to compel is **DENIED** as it relates to plaintiff's request in the first supplemental subpoena for Vantiv to produce residual data in a condensed reporting format. Likewise, Vantiv's motion to quash is **GRANTED** as it relates to this information, as Vantiv has provided plaintiff with another "viable means to obtain the same evidence" in the documents Vantiv already has produced. *See Baumgardner*, 2013 WL 765574, at *1.

Plaintiff also argues that Vantiv has failed to meet its obligation under Rule 45(a)(1)(D) to permit plaintiff to inspect or test the accuracy of the residuals paid by Vantiv to MSII. However, this argument is also not well-taken. First, as already explained, plaintiff has not taken the necessary steps to analyze the residual data Vantiv has provided. Specifically, plaintiff has not used the sum function in Excel to total the amount of residuals that Vantiv purportedly paid to MSII. Thus, because plaintiff has not even identified the sum amount of residuals that Vantiv purportedly paid to MSII, plaintiff has not identified any basis for calling Vantiv's data into

13

question such that inspection or testing of that data would be warranted. Second, pursuant to plaintiff's agreement with MSII in the Michigan court, Vantiv agreed to provide plaintiff with an affidavit that would verify the process Vantiv used to produce the information in the residual reports and attest to the accuracy of the information so produced. However, plaintiff informed Vantiv that such an affidavit would not be required. Plaintiff now questions the accuracy of the data and the process by which it was produced, but has not identified any plausible basis for its concerns. Third, as Vantiv notes in its supplemental response, plaintiff "has apparently decided not to conduct a document deposition despite stated intentions of doing so." (Doc. 22 at 2 n.5). Plaintiff could have used such a deposition to explore whether there is any evidence that Vantiv's process was inadequate or its records were inaccurate. In sum, plaintiff has not provided any evidence to suggest that Vantiv's response to the request for residual reports was inaccurate, such that inspection or testing is warranted.

Instead, at oral argument, plaintiff provided the Court with an exhibit to advance its theory that MSII orchestrated a diversion of residuals from plaintiff's merchant accounts by changing the associate and chain codes assigned to plaintiff's merchants. (*See* Various Associates and Chains Used for MAS Merchants, Doc. 16-1, Exh. 1). Plaintiff indicated at oral argument that the information in this exhibit came from monthly statements provided by TSYS, but presented no evidence to support that contention or to show that any such code changes resulted in diverted residuals. More importantly, plaintiff provided no evidence to suggest that such code changes call into question the validity of the residual information provided by Vantiv. In sum: (1) plaintiff has not demonstrated any basis to question the accuracy of the residual information Vantiv has provided; and (2) permitting plaintiff to inspect Vantiv's computer systems and to "test" the data provided by Vantiv through further production would impose an undue burden on Vantiv out of proportion to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1);

14

*Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136. Thus, plaintiff's motion to compel is **DENIED** as to plaintiff's request for read-only access to the NPCrm web reporting portal (Document Request No. 1 in the Oct. 14, 2015 subpoena) and for permission to inspect Vantiv's premises (*See* First Supplemental Subpoena at PAGEID# 124). Likewise, Vantiv's motion to quash is **GRANTED** as to these requests.

Finally, plaintiff argues that Vantiv's production of residuals was insufficient because it did not include information going back to March 2007 as requested in the subpoena. Instead, plaintiff indicates that it received residual data only from September 2011 through December 2015. (*See* Doc. 3 at 18). While MSII argues that plaintiff's request for residual information dating back to March 2007 is overly broad because the statute of limitations in Michigan for breach of contract is six years, plaintiff raised arguments at oral argument concerning possible bases to toll the statute of limitations. The Court finds that any determinations concerning the statute of limitations in this case should be decided by the Michigan court. Thus, depending on how the Michigan court ultimately decides the statute of limitations issue, residuals information dating back to March 2007 may prove to be relevant to plaintiff's claim. Thus, the Court finds that MSII's statute of limitations argument is not well-taken at this time.

A Vantiv representative has attested that "[r]esidual reports for [MSII] were consistently maintained since September 2011." (*See* Declaration of Kevin Frantz dated March 4, 2016, Doc. 11-10, Exh. V-10). At oral argument, the Court asked Vantiv to provide further information concerning its document retention policy for residual reports. Vantiv has since provided the following supplemental response:

> Vantiv does not have a retention policy specifically related to residual reports, and it has no contractual or statutory obligation to maintain residual information for a certain length of time. Vantiv does maintain transaction related data for seven years for credit card transaction data and three years for debit card transaction data.

15

(Doc. 22 at 3). From this response, it is unclear to the Court what residuals information responsive to plaintiff's request is in Vantiv's possession. For example, as to credit card transactions, Vantiv would seemingly have relevant data going back to 2009, even if such data was not "consistently maintained" for MSII prior to September 2011. Thus, to the extent Vantiv has any residual reports for the period from March 2007 to September 2011 related to plaintiff's merchants, plaintiff's motion to compel is **GRANTED** and Vantiv's motion to quash is **DENIED**. Vantiv is **ORDERED** to produce any residual reports for plaintiff's merchants from this time period to the extent Vantiv has retained them. Vantiv is **DIRECTED** to file with the Court a notice that identifies what residual reports, if any, Vantiv has retained related to plaintiff's merchants for this time period.

### B. Plaintiff's Remaining Requests (Document Request Nos. 4, 6-9, 12-17; Second Supplemental Subpoena)

Plaintiff's remaining unfulfilled requests appear to be directed toward showing that Vantiv improperly calculated the amount of residuals it should have paid to MSII. However, this information is not relevant to plaintiff's breach of contract claim against MSII. The Court again notes that Vantiv is not a party to the Michigan action and, thus, plaintiff has not alleged in its complaint any wrongdoing on the part of Vantiv that might make these requests relevant. Instead, the relevant issue is whether plaintiff received the proper percentage of the residuals that Vantiv actually paid to MSII related to plaintiff's merchants. As noted above, Vantiv has provided residual reports from September 2011 through December 2015 that are responsive to this relevant issue, and the Court has ordered Vantiv to provide plaintiff with any additional residual reports from March 2007 through September 2011 that it has retained related to plaintiff's merchants.

Plaintiff has argued that these additional requests are relevant to showing fraudulent behavior on the part of MSII. However, the Michigan court dismissed plaintiff's fraud claims against Concannon and Leodler, and plaintiff did not plead a fraud claim against MSII. (*See* First Amended Complaint with Jury Demand, Doc. 3-1, Exh. A; W.D. Mich. Case No. 1:15-cv-563, Doc. 29). Thus, plaintiff's additional requests in document request numbers 4, 6-9, and 12-17 are not relevant to plaintiff's surviving breach of contract claim against MSII and are not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Further, compliance with the subpoena in this regard would impose an undue burden on Vantiv. *See Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136. The information that plaintiff seeks in these requests is not relevant, nor is it crucial to plaintiff's breach of contract case. *See Baumgardner*, 2013 WL 765574, at *1. Accordingly, plaintiff's motion to compel is **DENIED** and Vantiv's motion to quash is **GRANTED** as to document request numbers 4, 6-9. and 12-17. For the same reasons, plaintiff's motion to compel is **DENIED** and Vantiv's motion to quash is **GRANTED** as to plaintiff's second supplemental subpoena.

C. <u>Vantiv's Motion for Sanctions</u>

The Court declines to impose sanctions under Fed. R. Civ. P. 45(d) as Vantiv's motion to quash has been denied, in part, and Vantiv has failed to justify the imposition of sanctions in this matter. *See* S.D. Ohio Civ. R. 7.2(a)(1).

**IV. Conclusion**

Based on the foregoing:

(1) Plaintiff's motion to compel (Doc. 3) is **GRANTED IN PART**. Vantiv is **ORDERED** to produce any residual reports for plaintiff's merchants from March 2007 to September 2011 to the extent Vantiv has retained them. Vantiv is **DIRECTED** to file with the Court a notice that identifies what residual reports, if

17

any, Vantiv has retained related to plaintiff's merchants for this time period.

Plaintiff's motion to compel is **DENIED** in all other respects.

(2) Vantiv's motion to quash (Doc. 12) is **DENIED IN PART** as to any residual reports Vantiv has retained related to plaintiff's merchants from March 2007 to September 2011. Vantiv's motion to quash is **GRANTED** in all other respects.

(3) Vantiv's motion for sanctions (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

Date: 4/20/16

Karen L. Litkovitz
United States Magistrate Judge